Peelle, Ch. J.,
delivered the opinion of the court:
From 1878 to June 30, 1889, the Bureau of Engraving and Printing, under four separate contracts or licenses therefor from the patentee and oivners (claimant’s assignors), as hereinafter set forth, used, first, six steam plate printing presses embodying Milligan patents Nos. 180490 and 193097, with which presses were automatic wipers substantially the same as those for which letters patent were afterwards applied for and granted; and, later, twelve additional like presses and wipers 'after the issue of letters patent for said wiper, as hereinafter’ stated.
The royalty of $1 for every 1,000 perfect impressions under the first contract for one press ivas paid for the two patents on the press, with, unpatented wipers, the owners representing at the time that the press was so perfectly adapted to the work, that every part of the plate was wiped equally.
Under the second and.subsequent contracts $500 was paid for the right to make each press and a royalty of $1 for every 1,000 accepted impressions printed thereon, which payments as provided ‘by the contracts gave the Government *508 the right, without the payment of additional royalty, to "the use of any improvements for which letters patent had been or might thereafter be granted to said Milligan or Steel, or either of them, or in which they might have any interest.
.Under these contracts each of the presses nsed was operated with an automatic wiper substantially the same as that embodied in Milligan patents Nos. 321743 and 3607Hi, for the use of which presses with automatic wipers the royalty agreed upon was paid to the claimant’s assignors; and in respect to the payment of the royalty under the last two contracts appropriations were made bjr Congress (24 Stat. L., 222, 227, 509, 515)- The same rate of royalty was paid after as well as before the granting of letters patent for the automatic wiper.
By the act of March 2, 1889 (25 Stat. L., 945), making appropriations for the sundry civil expenses of the Government, it was in substance provided that unless the patentees of said presses would accept the $500 theretofore paid them as royalty on each press, and further agree to accept 1 cent instead of $1 for each 1,000 impressions for the further use of said presses, they would not be used in said Bureau after the close of the then fiscal year.
The terms specified in said act were embodied in the draft of a formal agreement which was sent to the claimant’s assignors, but they, on July 8, 1889, declined to accept the same, and thereupon the further use of said presses, except as to one of them, under the contract of August 30, 1887, hereinafter referred to, was discontinued and they were, after the bringing of this action, destroyed.
About five years after the discontinuance of the use of said eighteen presses and after patent No. 180490 had expired, the Bureau of Engraving and Printing caused to be manufactured, under the contract with Messrs. Floe & Co., of New York, as set forth in finding xxxi, three, and later increased the number to twenty-five, presses and wipers, substantially like the eighteen presses and wipers theretofore used in said Bureau under the contracts • aforesaid; but in respect to said twenty-five presses and wipers the Government declined to continue the payment of royalty under said contracts. Hence this action.
*509 The press and wiper were both the inventions of James Milligan, to whom and to his executrix letters patent were issued, but before any contract was made Charles F. Steel had become by assignment the owner of an interest therein. Before any application had been made for letters patent for the automatic wiper on said press, but after the patentee and owners had represented that the press was “ so perfectly adapted to the work that every part of the plate was wiped equally,” as set forth in finding iv, the Bureau of Engraving and Printing, with the authority of the Secretary of the Treasury, on January 9, 1878, entered into the first contract with Milligan and Steel, by which one press embodying Mil-ligan patents 180490 and 193097 was installed in said Bureau at its expense and operated with the mechanical wiper as mentioned above, though no mention was made of any particular patent.
Under that contract the Government, agreed, to pay the operating expenses for six months, unless sooner satisfied with the trial, and to pay $1 for every 1,000 perfect impressions printed thereon; and, further, it was agreed that “ at the end of the trial the Department to have the right to buy the press if satisfied with its work, at a price which may be agreed upon by its owners and the Department, and to buy at the same price as many additional presses as it m.ay desire.”
The trial proved satisfactory, and after March, 1879, said press was operated as a part of the machinery of the Bureau and subsequently sold to the Government for the sum of $500, but the right to continue the use of the same was conditioned upon the continued payment of' the royalty of $1 for every 1,000 perfect impressions.
Again, on February 18, 1880, and before any application for letters patent for said wiper had been filed, a second contract was entered into for five additional like presses and wipers, for which the Government agreed- to pay $500 for the right to make each press and a continuous royalty of $1 for each 1,000 accepted impressions printed thereon.
On June 26, 1886, after the granting of letters patent No. 321743, dated July 7, 1885, covering the automatic wiper *510 substantially as theretofore used, a third contract was entered into for sis additional presses; and on August 30, 1887, after the granting of letters patent No. 360716, dated April 5, 1887, covering said wiper substantially as theretofore operated, a fourth contract was entered into for six additional presses on substantially the same terms as provided in the contract of February 18, 1880, making in all eighteen presses; and in addition thereto the second and subsequent contracts provide in substance that the Government shall have, without the payment of additional royalty, the right to change and alter the presses so purchased to conform to any improvements in plate printing presses for which letters patent are now oi: shall hereafter be granted James Mil-ligan or Charles F. Steel, or either or both of them, or in accordance with any improvement for which letters patent shall hereafter be issued which shall be applicable to these presses or in which the said Milligan and Steel shall have any interest.
On April 8,1887, the owners of all the four patents (claimant’s assignors) executed to the claimant an assignment of all their right, title, and interest in and to the patents on said press and wiper, but said assignment was not acknowledged until after the date of the last contract (August 30, 1887) and was not recorded until October 26, 1894, after the expiration of both patents on the press, though the Government, as set forth in finding xix, was notified of said assignment on June 8,, 1894, before it had used any of the twenty-five like presses and wipers as aforesaid. All the contracts or licenses aforesaid were likewise assigned or attempted to be asigned at- various times to the claimant before the manufacture and use of said twenty-five presses and wipers or either of them.
The claimant as assignee of the contracts and patents contends that it is entitled to recover thereunder royalty for said twenty-five presses and wipers and their use, and that by reason of said contracts the Government is estopped from setting up, as against it, the invalidity of said patents or either of them.
The defendants contend that the contracts operated as a limited license, i. e., for the use only of the eighteen presses *511 and wipers, which under Revised Statutes, section 3737, • could not be assigned; and that if entitled to recover as as-signee of the patents for the twenty-five presses and wipers and their use the claimant must, if the patents on the wiper are valid, do so on an implied contract.
It is clear that the Government was not obligated by the contracts, or either of them, to use the eighteen presses and wipers any particular length of time. It had the undoubted right to discontinue the use of-all the presses, as it did June 30,-1889, independently of the act of Congress of March 2, 1889, supra, without incurring any liability to the claimant or its assignors therefor. On the other hand,' if the eighteen presses, or any of them, were used during the lifetime of the patents for which the royalty was agreed to be paid, the contract obligated the Government to pay said royalty; and in this connection it is immaterial whether, under Revised Statutes, section 3737, the contracts as such could, have been assigned so as to vest the assignee with the rights of the assignors, as the assignment of the patents under Revised Statutes, section 4898, concededly carried with it the right of the assignee to the payment of the royalties accruing under the license of its assignors, at least after actual or constructive notice to the Government of said assignments. (Freedmans Saving Company v. Shepherd, 127 U. S., 494-4 Comp. Dec., 43.)
So far as appears from the contracts, the royalty paid was for the use of the patents embodied in the press, Nos. 180490 and 193097, with wipers, and this is apparent when we consider that the rate of royalty agreed upon by the first and second contracts, before the application for letters patent for the wiper had been filed, was the same as it was after letters patent had been issued therefor, thus showing that the press was not regarded as a completed thing without the wiper, and especially does this appear when we consider the representations made by the patentee and owners before the making of the first contract as to the adaptability of the wiper coupled with the right of the Government under subsequent contracts, without the payment of additional royalty, to alter and change said press to conform to any im *512 provements on said press. In other words, the use of the automatic wiper before letters patent were issued therefor appears to have been regarded by its owners as essential to give to the press that value for which the royalty was joaid, and for that reason doubtless no additional royalty was paid for the wiper after letters patent had been issued therefor— not that the press without the wiper was of no value, for it was a most useful and valuable invention, but that it was much more valuable with than without the automatic wiper, while the wij)er without the press was of no value. The two combined made a complete, useful, and economical machine, and it might be assumed, from the representations made as to the adaptability of the wiper, that but for. the wiper the Government might have secured' a much more favorable contract.
In this view of the case it might be held that whether the patents on the wiper be held void or otherwise no allowance should be made therefor, as the payment of the royalty for the use of the press (covered by the two patents thereon) appears to have included the use of the wiper as essential to add value to the press. Under the representations made by the patentee and owners as to the wiper before the making of the first contract the wiper became a part of the press under the several contracts and Avas used alike on all the eighteen presses after, as well as before, the granting of letters patent therefor, so that no change or alteration in the Aviper Avas necessary after the issue of said letters patent to conform it to any improvements on said press. Clearly it Avould have been a breach of the contract on the part of the patentee and owners had they not furnished the wiper Avith the press, as by their representations they had agreed to do. Bxit as the tAvo patents on the wiper must be held invalid under Revised Statutes, section 4886, by reason of their- sale and public use substantially as patented for more than two years prior to the filing of an application therefor, AAre need make no further comments in this connection. (Egbert v. Lippmann, 104 U. S., 333; Smith & Griggs Mfg. Co. v. Sprague, 123 U. S., 257; and Andrews v. Holt, 123 U. S., 267.)
*513 By its contracts for the purchase and use .of the eighteen presses and wipers as stated, the Government thereby conceded the validity of the patents and each of them as to said presses on which the royalty had accrued, and as between the parties thereto, under the decision in the case of the Harvey Steel Company, 196 U. S., 310 (affirming the decision of this court, 38 C. Cls. R., 662; 39 id., 297), would have been, as the defendants concede, estopped from setting up the invalidity of said patents or either of them as to said eighteen presses so used under said contracts.
This being true, did the Government by discontinuing the use of the eighteen presses and wipers, for the purchase and use of which the contracts were made, thereby absolve itself from the further payment of royalties under those contracts to the claimant as assignee for the use of the twenty-five like presses and wipers so procured under the contract with Messrs. Hoe & Co. ?
In the Harvey Steel Company case the license was unlimited for the use of the process known as the “ Harvey process ” for the treatment of armor plate for use in the construction of vessels. The use of the process was not limited to particular vessels, and the royalty therefor had accrued before the Government raised the question of the invalidity of the patent. In the present case the royalty had not accrued, and objection was made to payment on the ground of the invalidity of the patents on the wiper at or a short time after the Government commenced to use the , presses so manufactured by Hoe & Co.
The parties, by making separate contracts for the presses purchased and used, thereby construed them as limited to the particular presses for which said contracts were made respectively. They deemed it essential to enter into separate contracts for the presses which the Government was permitted to purchase and use. The first contract for the use of the one press can not therefore be held a continuing license in the face of the subsequent contracts for each lot of presses. In the construction of contracts the court must take into consideration the action of the parties thereunder. In other words, where there is doubt as to the proper meaning of a *514 contract the construction which the parties thereto have given it by their acts, if not erroneous therewith, is entitled to great weight. (Chicago v. Sheldon, 9 Wall., 50, 54; Topliff v. Topliff, 122 U. S., 121.)
Congress, by their language in the act discontinuing the use of the presses in the Bureau — unless the patentees would accept the $500 theretofore paid them as royalty on each press and agree to accept 1 cent in lieu of $1 for each 1,000 perfect impressions theretofore printed thereon — appear to have shared the same view. They by their act evidently regarded the contracts as licenses limited to the eighteen particular presses which they covered, and while their construction of an existing contract would not bind the court, it is nevertheless in harmony with the conclusion we have reached; and we may add that the language used by the attorney of the owners in his letters of June 5, 1888, set forth in finding-xxi, and August 15, 1893, set forth in finding xxviii, is at least akin to the same view.
• The fact that the last two contracts provided for payment to the claimant’s assignors “ or their assigns ” adds nothing to the claimant’s right, as that term is satisfied by the assignment of the patents, which carried with it the right of the claimant company to receive the royalties accruing on the eighteen presses under the license of its assignors. Nor can it be held in this case that the mention of patents on the iviper in the last two contracts, when considered in connection with the prior contracts, adds anything to the claimant’s position, as the royalty paid under the two first contracts was the same as that paid under the two last, and therefore at the time of making said last two contracts it was unnecessary to inquire as to the validity or invalidity of the patents on the wiper, as nothing additional was being paid therefor.
We must therefore hold that the contracts and each of them for the eighteen presses and wipers were licenses limited to those particular presses, and that the claimant as assignee of the patents has no right to recover royalty under said contracts for the twenty-five presses and wipers manufactured by Messrs. Hoe & Company.
The wiper constructed, adjusted, and used as set forth in finding xxvi, being the wiper used on the first and subse *515 quent presses installed in the Bureau of Engraving and Printing, and being substantially the wiper for which-letters patent were subsequently issued to the executrix of said Mil-ligan, was in public use for more than two years before the applications of October 21, 1880, and January 29, 1883, respectively.
The wiper was first used in the American Bank Note Com: pany, to whom it was sold with- the press, as found in' paragraph one of said finding, and by the National Bank Note Company, in New York, from January, 1877, until some time in 1878, in the printing of various stamps for foreign governments and for companies, and from about February, 1878, when the first press was installed in the Bureau, substantially the same wiper was in public use in said Bureau for more than two years before the applications aforesaid, or either of them.
That the patentees and owners, as early as April, 1877, regarded the experimental stage of the wiper as passed, seems evident from the representation then made by them to the Secretary of the Treasury, as set forth in finding iv. In their letter to the Secretary asking permission to make a test before-him of the press they stated that the press had been in successful operation by private parties for upward of a year, and that the press was “ so perfectly adapted to the work that every part of the plate is wiped equally by such a motion as to cross all lines.” If so, then the experimental stage of the wiper had passed, and this view of the case is well supported by the other facts found, for the wiper first used in the Bureau was substantially the wiper for which letters patent were thereafter issued. This being true, the experimental stage of the wiper for the purpose of perfecting the invention had ceased and the two years begun to run, and, therefore, the authorities relied upon by the claimant, and-particularly the case of Elizabeth v. Pavement Company (97 U. S., 126), do not apply.
The trial or experimental use of the press in the Bureau under the first contract was not for the purpose of perfecting the invention, but thereby to determine whether the press would do the work required more speedily and economically *516 than the hand press. In other words, it was the user’s trial and not the inventor’s, and therefore did not operate to lessen the.time of the public use of the wiper. (Consolidated Fruit-Jar Co. v. Wright, 94 U. S., 92; Smith and, Griggs Mfg. Co. v. Sprague, 123 U. S., 249; International Tooth Crown Co. v. Gaylord, 140 U. S., 55; and Eastman v. Mayor City of New York, 134 Fed. Rep., 844.)
About February, 1878, the single-padded block then in use in the Bureau, corresponding to patent No. 321743, was removed, and three narrow blocks separately padded, corresponding to patent No. 360716, were substituted. The one, however, was the mechanical equivalent of the other, and both were operated in substantially the same way, and having been in public use for more than two years before the applications or either of them for letters patent‘therefor, they must, as between the claimant as assignee of the patents and the Government, be, as they are held, invalid.
This conclusion renders it unnecessary to further consider the state of the art respecting patent No. 360716, which is stated in finding xxxi.
It was upon the ground of the invalidity of the patents on the wiper that the Chief of the Bureau of Engraving and Printing refused to pay royalty on the twenty-five presses, while recognizing the obligations of the Government under its contracts for the use of the eighteen presses and wipers. And in this connection it appears from finding xxxm that after the contract of March o, 1894, with Messrs. Floe & Co., one of the eighteen presses and wipers made and used under the contract of August 30, 1887, was again set up and operated in the Bureau from about December, 1894, after the expiration of both the Milligan patents on the press, to about November, 1895, during which time 622,100 accepted impressions from plates 19 by 12f inches were printed thereon. But as the only patents then in force wer„e those referred to on the wiper, which standing alone were of little if any value, and if of value such value is not shown, no recovery can be had therefor.
Furthermore, as we heretofore said, the contract for the use of the press undoubtedly carried with it, without addi *517 tional'royalty, the right to the use of the wiper which was installed with the first and subsequent presses and used as hereinbefore stated. The use of the wiper was under the contracts a part of the consideration for the use of the press, and when the patents on the press expired the right to royalty therefor ceased, whether the patents on the wiper were valid or invalid.
It appears from finding xxxi that three of the presses and wipers embodying Milligan patents on the press which expired July 31, 1893, and July 16, 1894, as well as on the wiper, were used from June 11 to July 16, 1904, both inclusive, before the expiration of patent number 193097, during which time 95,050 accepted impressions were printed thereon.
But assuming the right of the claimant as assignee of the patents to recover on an implied contract for the three presses, there is no evidence in the record from which the court can asses the damages for the unexpired patent on the press, and besides its case both in pleading and in argument is predicated on the theory of a recovery on the contracts.
After the expiration of the British patent, number 8278, covering both said patents on the wiper, two other presses were in use in said Bureau to July 6, 1902, when patent number 321743 expired, each having a double wiper constructed and operating as set forth in finding xxxv; but assuming that the two presses so used embodied the two patents on the Milligan wiper, no recovery can be had for said two presses or their use for the reasons we have, given as to the other twenty-five presses.
The conclusion of the court on the whole case is that the petition must be dismissed.
FIowrv, J., was not present when this case was tried and took no part in the decision.