## AMERICAN STAINLESS STEEL CO. v. LUDLUM STEEL CO.

(District Court, S. D. New York. February 4, 1926.)

**1. Patents ☞259—Manufacturer, who by advertising solicits purchasers to use manufactured material for infringing articles, cannot deny contributory infringement.**

Manufacturer of stainless steel, who by advertising solicits purchasers to use such steel for manufacture of infringing articles, cannot deny that it contributed to infringement.

**2. Patents ☞328—Haynes patent, No. 1,299,-404, and Brearley patent No. 1,197,256, for articles of stainless steel, held to include method of making steel, and owners entitled to profits of manufacturer.**

Haynes patent, No. 1,299,404, and Brearley patent, No. 1,197,256, for wrought articles and cutlery of stainless steel, are not limited to articles covered by their claims, but include method of manufacturing stainless steel, and owners are entitled to profits derived by infringers from making steel in accordance with instructions disclosed by patents.

**3. Patents ☞312(1)—Stainless steel, manufactured and sold for cutlery purposes, must be assumed, on accounting for infringement, to have been so used.**

On accounting for infringement of patent, stainless steel, specially manufactured and sold for cutlery purposes to cutlery manufacturers, on whom desirability of steel for cutlery purposes was strongly impressed, in absence of contrary evidence, must be assumed to have been actually used for purpose for which manufacturer sold it.

**4. Patents ☞328—Haynes patent, No. 1,299,-404, for stainless steel, should not be extended to articles in which stainless quality is unimportant.**

Claims of Haynes patent, No. 1,299,404, for stainless steel tools and cutlery, should not be extended to articles in which stainless quality of steel is unimportant, even when such steel has same composition covered by patent.

**5. Patents ☞328—Brearley patent, No. 1,197,-256, for stainless steel cutlery containing less than .7 per cent. carbon, cannot be extended to steel containing higher percentage.**

Brearley patent No. 1,197,256, for stainless steel cutlery made of steel containing less than .7 per cent. carbon, cannot be extended to steel containing more than .7 per cent. carbon.

**6. Patents ☞173—Pioneer patent should be liberally construed, to secure owner full enjoyment of invention disclosed, unless he intended to claim only part of invention.**

Patent covering pioneer invention should be liberally construed, to secure to its owner full enjoyment of invention disclosed during term of patent, unless it is clear that inventor intended to claim for patent only part of invention disclosed.

**7. Patents ☞328—Haynes patent, No. 1,299,-404 for stainless steel, held not to require perfect stainlessness, and infringed by articles commercially accepted as stainless.**

Haynes patent, No. 1,299,404, for steel articles having surface of "incorrodible character of surfaces of noble metals," held not limited to articles perfectly stainless, in sense that noble metals are stainless, "having the character of" being relative and not absolute term, and was infringed by articles commercially accepted as stainless.

**8. Patents ☞232—Mere necessity of quenching infringing stainless steels in oil held not to avoid infringement of patent not disclosing necessity of quenching.**

Mere showing of necessity of quenching infringing stainless steels in oil at specified temperature held not to avoid infringement of plaintiff's patent on stainless steel, notwithstanding plaintiff's patents contained no instructions for quenching in oil to produce stainlessness.

In Equity. Suit by the American Stainless Steel Company against the Ludlum Steel Company. On exceptions by both parties to master's report on accounting in patent infringement suit. Defendant's exceptions overruled. Plaintiff's exceptions overruled in part, and sustained in part.

Hearing on exceptions to the master's report on accounting in patent infringement suit. The patents here involved (Haynes, No. 1,299,404, and Brearley, No. 1,197,256) were considered and held valid by the Circuit Court of Appeals in this circuit (290 F. 103), and thereafter the usual decree, with order of reference to a master to take and report an account of profits and damages resulting from infringement, was entered. The master has filed his report, and the matter now comes up on exceptions thereto, filed both by the plaintiff and the defendant.

Charles Neave, of New York City, Marshall A. Christy, of Pittsburgh, Pa., and Maxwell Barus, of New York City, for plaintiff.

Alan D. Kenyon and Herbert H. Dyke, both of New York City, for defendant.

THACHER, District Judge. The nature of the patents is sufficiently clear from the decision of the Circuit Court of Appeals. Speaking generally, they are for wrought metal articles and cutlery fashioned from what is known as "stainless steel." The defendant is a manufacturer of steel products, and among other products has manufactured and sold steel for cutlery and other purposes, for which it is sought to be held accountable as a contributory infringer of the patents in suit. On the proceedings be-

fore the master, damages were waived by the plaintiff, and the defendant was held accountable for profits realized in the manufacture and sale of steels sold for cutlery purposes to manufacturers of cutlery of a composition common to both the Haynes and Brearley patents. The claims of Haynes, whose is the generic patent, cover alloys containing carbon of from .1 per cent. to 1 per cent., and chromium of from 8 per cent. to percentages in excess of 20 per cent. The claims of Brearley, whose is the specific patent, cover percentages of less than .7 per cent. of carbon, and from 9 per cent. to 16 per cent. of chromium. The master included in the accounting only steels which were within the field of percentages of carbon and chromium common to both patents, and which were sold to manufacturers of cutlery, excluding silcrome valve steels sold and used for the manufacture of valves for use in airplane and motor engines.

The defendant has excepted to the master's report in so far as it allows the recovery of any profits derived from the manufacture of any steels, claiming that there is no proof to show that any of these steels were used in the manufacture of infringing articles. The plaintiff has excepted to the master's report, insisting that there should have been included in the accounting certain steels manufactured and sold by the defendant for cutlery purposes, which are within the field of percentages claimed by Haynes, but not within the field of percentages claimed by Brearley, and further insisting that the master was in error in limiting the accounting to steels sold for cutlery purposes, specifically claiming that the defendant is accountable for profits derived from the manufacture of its silcrome valve steels.

[1] There can be no doubt that the sales of the defendant's steels within the field common to both patents for cutlery purposes were made under circumstances which would constitute the defendant a contributory infringer, if this steel was in fact devoted by the defendant's customers to an infringing use. If they in fact fashioned this steel into cutlery articles, as they were solicited to do by the defendant's advertising, the defendant cannot be heard to say that it did not contribute to the infringement. Henry v. Dick Co., 224 U. S. 1, 48, 32 S. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880; Kalem Co. v. Harper Bros., 222 U. S. 55, 62, 32 S. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285; Thomson-Houston El. Co. v. Kelsey El. Ry. Specialty Co. (C. C.) 72 F. 1016.

[2] Defendant's counsel do not say this. What they do say is that neither Haynes nor Brearley patented a composition of metal, but only the articles covered by their claims, and that therefore there can be no recovery of profits derived from the manufacture and sale of the steel, which they say must be treated as an unpatented raw material entering into the manufacture of a patented article. Hemolin Co. v. Harway Dyewood & Extract Mfg. Co. (C. C. A.) 166 F. 434, and similar cases are cited. These authorities are distinguishable and are not controlling. They involved claims for profits in the manufacture of an ingredient or element of the patented product, the manufacture of which was in no way covered by the patent. Here there could be no infringement, unless in the process of making the steel ultimately used in fashioning the patented articles the learning of the patents was followed.

Of these patents the Circuit Court of Appeals has said: "Brearley and Haynes, proceeding along similar lines and having in view substantially the same purpose, produced as a new article of manufacture a wholly novel product, and something almost in denial of previous scientific disclosure, 'stainless steel.' To such an inventive concept the often misleading word 'pioneer' may fairly be applied." And further: "Yet these patents refer to the production or making of a certain kind of steel; they instruct with remarkable precision as to the component parts of the material, which is to be stainless."

As the special master in this case has said: "If the customers of defendant had manufactured the infringing article by following the directions set forth in the patent, using steel and chromium as their raw material, there would be no doubt that they would be accountable for the entire profit resulting. Defendant has received whatever profit is represented by the preparation of the alloy before sharpening, hardening, etc. It is that profit for which it seems to me to be accountable."

The distinction between this case and such cases as Hemolin Co. v. Harway Dyewood & Extract Mfg. Co., supra, Canda Bros. v. Michigan Malleable Iron Co. (C. C. A.) 152 F. 178, and Rumford Chemical Works v. N. Y. Baking Powder Co. (C. C.) 136 F. 873, is that in all of those cases it was sought to extend the accounting to matters entirely outside the field of the patent, just as if in this case there had been claimed profits derived from the manufacture of carbon, chromium, or other raw materials,

through the combination and treatment of which Haynes and Brearley produced stainless steel. The production of stainless steel is the essential and all-important disclosure in their process of manufacturing the patented articles covered in their patent claims. Without this disclosure their inventions would have been utterly worthless, and to deny the recovery of profits derived from the making of the steel prepared in accordance with their instructions, as a step in the process of manufacturing the finished patented article would be to deprive the plaintiff of the principal value of the inventions covered by the patents in suit. The raw materials of this patent were "the component parts of the material which is to be stainless," surely not the stainless product first produced under the instructions of the patents. There was therefore no error in requiring an accounting of profits derived from manufacturing and selling stainless steel for an infringing use.

[3] But the defendant insists that there can be no recovery, because no proof was offered to show that any of the steel manufactured and sold by it was used by its customers in the manufacture of infringing articles. The defendant has accounted only for steel specially manufactured and sold for cutlery purposes to cutlery manufacturers, upon whom the desirability of the steel for such purposes was strongly impressed by the usual selling and advertising methods. Under these circumstances, and in the absence of any proof to the contrary, it must be assumed that the steel was actually used for the purposes for which the defendant sold it. Consolidated Rubber Tire Co. v. Diamond Rubber Co. (D. C.) 226 F. 455, 461, affirmed (C. C. A.) 232 F. 475.

What has been said disposes of the defendant's exceptions to the master's report. Coming to the plaintiff's exceptions, it is insisted that the defendant is accountable and has not accounted for profits derived from the manufacture and sale of—

(1) Silcrome valve steel, containing chromium from 9 to 9.08 per cent., carbon from .37 to .40 per cent., and silicon from 3.22 to 3.50 per cent.; the percentages of chromium and carbon being within the claims of both Haynes and Brearley.

(2) Silcrome valve steel No. 1, containing chromium from 8 to 9 per cent., carbon from .40 to .50 per cent., and silicon from 3 to 3.5 per cent.; the percentages of carbon being within the claims of both Haynes and Brearley, and the percentages of chro-

mium being within the claims of Haynes, and not within the claims of Brearley.

(3) Silcrome valve steel No. 2, containing chromium from 7.50 to 8.50 per cent., carbon from .50 to .60 per cent., and silicon from 1.25 to 1.75 per cent.; the percentages of carbon being within the claims of both Haynes and Brearley, and the percentages of chromium being only partially within the claims of Haynes, and not within the claims of Brearley.

(4) Nevastain cutlery steel, containing carbon from .70 to .85 per cent., chromium from 13.25 to 13.75 per cent., and silicon from 1 to 1.5 per cent.; the percentages of chromium being within the claims of both Haynes and Brearley, and the percentages of carbon being within the claims of Haynes and not within the claims of Brearley.

[4] The master, concluding that the valves made from silcrome valve steel do not infringe, even when the steel contains percentages of chromium and carbon within the percentages specified by both Brearley and Haynes, has denied recovery of profits derived from the sale of any of the first three items above. The correctness of this ruling must depend upon proper patent construction. Giving the claims all the liberality of construction to be accorded to a pioneer patent, the fact remains that the invention of Haynes is limited to tools and articles with surfaces of the incorrodible character of noble metals, but with the strength and hardness and the capacity of taking and retaining a cutting edge required in articles of the nature of cutlery and edged tools, and Brearley in his specifications described his invention as relating to "new and useful improvements in cutlery or other hardened and polished articles of manufacture, where nonstaining properties are desired," claiming (1) "a hardened and polished article" and (3) "a hardened and polished cutlery article."

The articles and tools to which both Brearley and Haynes limited their claims cannot include all manner of instruments and devices in the fashioning of which steel of the composition which they used may be found desirable for reasons unconnected with its stainless character. To so hold would be to extend their patents to the composition itself, which is not the subject of any of their claims. The patents are upon finished articles, not upon the metal of which they are made. The production for use in fashioning the finished patented articles of steel of a permanent and polished luster, having the

untarnishable quality of the noble metals, was the accomplishment of Haynes and Brearley, to which the Circuit Court of Appeals accorded the merit of "pioneer invention." Using as they did a well-known alloy, ferrochromium, and treating it with special precautions, they succeeded in producing a steel product combining the well-understood and easily attainable qualities of strength and hardness with the entirely novel characteristic of stainlessness. This being the nature of their invention, their claims should not be extended to articles in which the quality of stainlessness is of no importance.

The master has found that none of the silcrome valve steel is stainless when used in the valves for which it is sold, and that the principal value of these steels for valve purposes is due to the presence of silicon in the steel, which insures red hardness and freedom from scaling. It is quite clear from uncontradicted testimony in the record that stainlessness is of no importance in the use of the valve. The mere fact that the presence of carbon and chromium in these steels in the percentages recommended by Brearley and Haynes may in a small degree contribute to their freedom from scaling under the very high temperatures to which they are subjected in use does not seem to me to bring the valves within the class of articles covered by the patents. I find no error in the master's ruling that profits derived from the sale of silcrome steels for the manufacture of valves should be excluded from the accounting.

[5] There remains the question whether Nevastain cutlery, made of steel containing carbon in excess of .7 per cent. is an infringement of either patent. Brearley says, "I have also found that, when the amount of carbon exceeds .7 per cent., the polished steel is tarnishable, whatever the amount of chromium it may contain;" and he accordingly expressly limits his claims to tools and articles composed of alloy containing carbon in quantity less than .7 per cent. In the face of this there is no room for the extension of Brearley's patent to steels containing more than .7 per cent. of carbon.

The claims of Haynes are, however, broader than those of Brearley, including alloys as high in carbon as 1 per cent. The defendant contends that, in view of the opinion of the Circuit Court of Appeals, the accounting cannot be extended beyond products within the disclosure of both patents. The Circuit Court of Appeals in its opinion said: "It was not thought necessary below, and we do not not think it necessary, to dwell upon the differences between the Haynes and Brearley patents. It is enough for the purpose of this case that defendant's product is within the disclosure of both. Whether there may not be in Haynes an attempt to cover too much ground is a question that may be left until occasion for decision arises." In the decree entered upon the mandate from that court, this question was reserved "until occasion for decision arises," and subject to this reservation the cause was referred to the master to take and report the account.

The Circuit Court of Appeals has sustained the validity of both patents, reserving only the question whether Haynes had not attempted to cover too much ground, in claiming a field of too widely extended percentages of carbon and chromium to produce stainlessness in every instance. I do not think it was intended by this reservation to arbitrarily confine Haynes to the Brearley field, if by so doing alloys clearly stainless in the sense of his patent are thereby excluded. It was shown to the master's satisfaction that the defendant's "Nevastain steels," for all commercial purposes, are quite as acceptable to the trade as stainless steels. The defendant has advertised and sold them as such under a fanciful tradename suggesting absolute stainlessness, and there can be no doubt that the desirable characteristic thus claimed for them is to some degree present, although certainly not in an absolute sense. The degree of stainlessness which they do possess results from the presence of carbon and chromium in percentages disclosed in the Haynes patent and to this extent at least the defendant has followed the instruction of the patent to produce a steel sold as a stainless steel for cutlery purposes.

[6] In considering infringement, it must not be forgotten that we are dealing with a pioneer invention covered by two patents, of which the Haynes patent is generic and the Brearley patent specific. Under these circumstances the Haynes patent should be read with that liberality of construction which will secure to its owner the full enjoyment of the invention disclosed during the term of the patent, unless it is clear that the inventor intended to claim for patent only a part of the invention disclosed.

[7] In reading the patent the learned special master has construed it to cover only those alloys which are stainless in an absolute

sense, basing his conclusion upon the wording of the claims, which describe the patented articles as "having surfaces of the incorrodible character of surfaces of noble metals." This construction would exclude from patent protection all compositions, whether within the field common to both patents or within the Haynes field alone, not having the same perfection of stainlessness which noble metals have. But the claims, even when read literally and apart from the specifications, are fairly susceptible of interpretation which permits variation from an absolute standard of perfection. "Having the character of" is a relative, not an absolute form of expression, and, when read with the subject-matter of the patent in mind, namely, the production of a steel combining stainlessness and hardness in varying degrees as desired, it becomes clear that Haynes did not intend to confine his claims to those articles which alone should be perfectly stainless, in the sense that noble metals are stainless. This is abundantly clear from his specifications, showing, as they do, the variable characteristics of the combinations possible within the field of his claims. I am therefore of the opinion that the defendant's Nevastain steels are stainless within the sense of the Haynes patent.

[8] But it is further insisted, and the proof fairly shows, that those steels, when not hardened by quenching in oil at a temperature of about 1,950 degrees, are not stainless. From this and the fact that there is no instruction to be found in Haynes for quenching in oil to produce stainlessness, the master concludes that, even if those steels could be regarded as stainless within the sense of Haynes, they do not infringe, because his instructions are inadequate for their preparation. The error involved in this conclusion seems to me apparent from the decision of the Circuit Court of Appeals in this case, where similar criticism was made in an unsuccessful effort to defeat the patents in their entirety. It was there held that the process of hardening steel was an old story, well known to those skilled in the art, to whom the patents were addressed. The court there said:

"We do not go into the exact number of heat degrees above the critical point of ordinary steel, to which steels like defendant's, or Brearley's preferred product (minus silicon), must be heated to insure stainlessness, because we do not think the exact number of degrees makes any difference, and are of opinion that such higher degree of heat is very far within the professional knowledge of the metallurgist or steel maker by whose competency these patents are to be judged."

Knowledge of the degree of temperature requisite to produce stainlessness, which is thus imputed to metallurgists and steel makers, necessarily presupposes knowledge on their part of those steps in the completion of the hardening process requisite to the attainment of that degree of hardness which will produce stainlessness. The process of cooling adequate to produce stainlessness is quite as easily determinable under the "try it and see" rule as is the requisite degree of temperature above the critical point. It follows that the mere showing of necessity for hardening by quenching in oil, in order to produce stainlessness, is not sufficient to avoid infringement of the Haynes patent. The effect of the master's ruling would be to confine the Haynes patent to those steels which became stainless when air-cooled. I find in the patent itself no such intention expressed, and it seems to me that the decision of the Circuit Court of Appeals forbids such a construction.

The defendant's exceptions to the master's report are overruled. The plaintiff's exceptions are overruled, except in so far as they relate to an extension of the accounting to Nevastain steels, which are in composition within the claims of Haynes and not within the claims of Brearley. To this extent the plaintiff's exceptions are sustained, and a proper order may be entered, directing the master to take an account of the profits derived from the manufacture and sale of such steel for cutlery purposes.