## ALLBRIGHT–NELL CO. v. STANLEY HILLER CO.
### No. 4995.

Circuit Court of Appeals, Seventh Circuit.
July 20, 1934.

Fred Gerlach and Norman H. Gerlach, both of Chicago, Ill., for appellant.

Franklin M. Warden and F. Allan Minne, both of Chicago, Ill. (Cromwell, Greist & Warden and Winston, Strawn & Shaw, all of Chicago, Ill., of counsel), for appellee.

Before EVANS and SPARKS, Circuit Judges, and STONE, District Judge.

STONE, District Judge (after stating the facts as above).

Appellant challenges the decree in toto. It denies liability for infringement on several grounds; one of them being that upon the findings of fact made by the court, its manufacture of the infringing products prior to the commencement of the suit was under and by virtue of the exclusive license which appellee had granted to it. It contends that it fully and properly accounted for all royalties due under said license contract, and it denies the facts upon which it is ordered to turn over its interest in the second patent to appellee.

The complaint was filed on February 24, 1930. On May 4, 1932, one Ozouf (defendant in court below who did not appeal) was made a party to the action, and the bill was amended alleging the grant of the patent, No. 1,828,968, to Hiller and Ozouf, and prayed for an assignment by appellant of its interest therein to appellee.

At the conclusion of the trial the bill was, over appellant's objection, amended to conform to the proofs adduced at the trial.

Prior to March 4, 1925, Stanley Hiller invented and his company, the appellee, had constructed a high-pressure press for extracting the oils and juices from animals and fish. On that date the appellant was in the business of making and selling packing house machinery and entered into a written contract with appellee wherein it acquired the exclusive right, for a period of ten years from the date of the agreement, to manufacture and sell high-pressure presses in accordance with the inventions of the two Hiller applications for patents that were then pending and which later matured into patents No. 1,700,407, granted January 29, 1929, and No. 1,739,459, granted December 10, 1929. By the terms of the contract appellant agreed to begin promptly after the signing of the contract and to continue through the life of the agreement to manufacture and sell the presses and to pay appellee for the said exclusive license, one-half of the selling price of presses it manufactured and sold, after first deducting the manufacturing costs.

Before trial appellee withdrew the allegation in its bill charging appellant with infringement of patent No. 1,739,459.

Immediately after the contract was signed appellee furnished appellant, Allbright-Nell Company, with the patterns, dies, drawings, blueprints, and other data pertaining to the press, and some time thereafter Stanley Hiller, president of appellee, came to Chicago and aided appellant in getting the press ready for market. Appellant manufactured and sold presses under said contract and on May 28, 1928, notified appellee in writing that it would discontinue the manufacture and sale of the presses under the agreement of March 4, 1925; that it considered the agreement terminated except for settlement of the account with respect to the presses manufactured and sold prior to May 28, 1928. Appellee refused to acknowledge the alleged right of said appellant to terminate the agreement and continued to treat it as in full force and effect to the time of the commencement of this action.

After May 28, 1928, appellant manufactured and sold presses similar to those manufactured under the contract, and marketed them under the name of "Anco."

The trial court found that the contract was valid, and that by its terms it was to be in force for a term of ten years, with no provision for earlier termination; that it was in force at the time the bill of complaint was filed; that appellant manufactured and sold presses under the license it acquired, but made no payments to appellee under the contract. These findings are supported by the evidence.

The District Court made other findings relative to the validity of the patents and their infringement. We deem it unnecessary to consider them, as we find that the rights of the parties to this action are controlled by the terms of the contract which was not terminated until the commencement of this action on February 24, 1930, thus eliminating the issue of patent infringements.

Until appellee acquiesced in or consented to appellant's attempt to repudiate the contract, appellant had the right to withdraw its proposed repudiation thereof, and appellee did not contract with any other person

394

for the manufacture or sale of the presses after May 28, 1928.

■ Appellant assigns as error the order of the District Court permitting appellee to amend its bill at the conclusion of the trial to conform to the proofs adduced at the trial. The amendment in part was as follows: "That plaintiff did not agree to a termination of said contract prior to the filing of this bill of complaint by which action plaintiff accepts said notice of termination." The amendment also substituted the word "royalties" for the word "profits." The proof clearly established the fact that appellee did not acquiesce in or consent to the termination of the contract until it filed its bill on February 24, 1930.

The amendment was therefore properly allowed by the District Court. No claim of surprise was or could be made by appellant. The amendment did not set up a new cause of action. It simply fixed the true date of the termination of the contract as disclosed by the evidence and made the bill conform to the proofs. The original bill was based upon the contract. The bill as amended is based upon the same contract and asks for the same relief, except that by the amendment the bill now alleges that the contract was not effectively terminated until the filing of the bill. It was plainly the court's duty to permit the filing of the amendment. Maryland Casualty Company v. Gerlaske (C. C. A.) 68 F.(2d) 497; Standard Bitulithic Co. v. Curran (C. C. A.) 256 F. 68; Walker Grain Co. v. Southwestern Telegraph & Telephone Co. (C. C. A.) 10 F.(2d) 272; Hardin v. Boyd, 113 U. S. 756, 5 S. Ct. 771, 28 L. Ed. 1141.

Inasmuch as the amendment was properly allowed, it is unnecessary for us to consider the validity of the patents or the alleged infringements thereof, and we express no opinion in regard to either issue. Appellant had a right to manufacture and sell its presses under the agreement up to the time the action was commenced, with the duty to account to appellee pursuant to the terms of the agreement.

■ Appellant also assigns as error that part of the decree directing the assignment of the interest of appellant in patent No. 1,828,-968, obtained on October 27, 1931, under the joint application of Hiller and Ozouf. The contract contained the following conditions: "All improvements and changes in designs, in the apparatus, machinery or equipments herein dealt with, whether patented or not, shall belong to First Party (Appellee)."

The District Court found that Ozouf, while employed by the Allbright-Nell Company, had made many inventions, each of which he had assigned to it; that he had worked with Hiller on the improvements of the press embodied in the Hiller inventions referred to in the contract; that Hiller and Ozouf had made a joint application for the patent granted as No. 1,828,968; that Ozouf executed an assignment of his interest in the patent and delivered it to the Allbright-Nell Company; that it either destroyed or refused to deliver it to appellee.

It appears that Ozouf was appellant's chief engineer, and, in the course of his employment without compensation other than his salary, he made a number of inventions, all of which he voluntarily assigned to his employer, including the Hiller-Ozouf patent. The assignments were made pursuant to his contract of employment with appellant. In Standard Parts Co. v. Peck, 264 U. S. 52, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033, it was held that where an employee is employed for the purpose of inventing or assisting in the invention of a device, then the products of his efforts belong to the employer; a part of his salary being claimed to be paid in consideration for his efforts in that direction. There can be but one inference drawn from the evidence in this case, and that is that a part of Ozouf's salary was paid to him in consideration of his efforts in perfecting inventions that he later assigned to his employer, and that he was obligated to and did make the assignment of the Hiller-Ozouf invention to appellant. Clearly under the terms of the contract appellee was entitled to the assignment of appellant's interest in this patent, and the court properly ordered appellant to execute the assignment. Guth v. Minnesota Mining & Manufacturing Company (C. C. A.) 72 F.(2d) 385, decided June 29, 1934.

The contract also contained the following stipulation: "It is * * * agreed that the selling price for all such machinery, * * * shall be fixed by mutual agreement by the parties * * * but in the event of any such agreement not being reached, such sale price shall be not less than twice the actual cost of such articles * * * and the fixing of such prices, if by agreement, shall be in writing. * * * *"

After the contract was signed the parties communicated by letter relative to the manufacture and marketing of the presses. There was some reference in the correspondence to the sale price of the presses, but we are satisfied that the correspondence never

ripened into an agreement which changed the original contract.

The decree of the District Court in so far as it directs recovery of damages, if any, under the contract from the Allbright-Nell Company that appellee may have suffered as a result of the breach of said contract, and in so far as it orders a reference and an accounting to determine said damages, and in so far as it directs the execution of the assignment to appellee of appellant's interest in patent No. 1,828,968, is affirmed. That part of the decree which holds the patents valid and infringed and directs an accounting of profits for their infringement by appellant is reversed. Each party to this appeal will pay one-half of the costs of the appeal.